## OSGOOD *v.* GREEN.

Under the provisions of chap. 137, Rev. Stat., providing for the appraisement of damages done by cattle taken in the enclosure of a party, and that the decision of the appraisers shall be final and conclusive, and their report be made to the justice by whom the appraisers are appointed, — the justice is the mere depositary of the report, and no notice of the time and place where the report will be delivered to him is necessary to be given to the parties.

Cattle taken in the enclosure of a party cannot be impounded for a mere *nominal* trespass; and where cattle were impounded and the appraisers appointed under the provisions of the statute, decided that no damages were done — *Held*, that replevin against the impounder could be maintained for the cattle.

APPEAL from the judgment of a justice of the peace. The action was replevin for a three years old bull ; and the declaration alleged that the defendant, on the 14th day of June, 1852, in a certain close described in the declaration, took the bull and unjustly detained him.

The defendant avowed the taking as follows :

MERRIMACK ss. Before Theo. B. Martin, justice of the peace, at Loudon, September 30, 1852. And the said Cyrus B. Green comes and defends, &c., when, &c., and avows the taking of the said bull, in said close, in which the same is alleged to be taken ; and justly, &c., because he says that the said close in which, &c., now is, and at the said time when, &c., was the close, soil and freehold of the said Cyrus B. Green ; and because the said bull was then in the said close, eating the grass there growing, and doing damage there to the said Cyrus B. Green, the said Cyrus B. Green took the said bull there, as for distress for the damage, and this he is ready to verify; wherefore he prays judgment and his damage, by reason of the wrongful replevying and delivery of the said bull to the plaintiff, to be adjudged to him.

To this avowry the plaintiff, among other pleas, made the following :

And for a further plea in this behalf to the said avowry, by leave of court here pleaded, the plaintiff says that the defendant, by reason of any thing in the said avowry alleged, ought not to avow the said taking of the said bull to be just ; because

he says that the defendant, after he had taken the said bull as aforesaid, impounded the said bull in the common pound in said Loudon; to wit, on the 14th day of August, at said Loudon; and the defendant did then and there leave with the pound-keeper of said pound a writing, containing the defendant's estimate of the supposed damage done by said bull, at the said time when, &c., and the amount of the fees and charges incurred in the premises. And in and by said writing the defendant estimated the said supposed damage done by said bull in said close at said time when, &c., at a great sum; to wit, the sum of three dollars. And there afterward, on the same day, the defendant caused a notice to be left at the plaintiff's usual place of abode, describing the said bull, so impounded, and stating the defendant's estimate of the supposed damage done by said bull in said close, at said time when, &c., and the said place where and the said time when said supposed damage was done, and the amount of fees and charges then incurred in the premises; and, also, the said place of impounding. And in and by said notice the said defendant then and there estimated said supposed damage done by said bull in said close, at said time when, &c., at a great sum; to wit, at the sum of three dollars. And the said plaintiff did there, on the 16th day of said August, refuse to pay the damages estimated by said defendant as aforesaid; to wit, said sum of three dollars; and did then and there apply to Theophilus B. Martin, then and there a justice of the peace for said county of Merrimack, to appoint three disinterested persons to appraise the supposed damage done by said bull in said close at the said time when, &c., pursuant to the statute in such case made and provided. And the said Martin, in his capacity of justice of the peace as aforesaid, did then and there notify said defendant to appear before him, said Martin, at a time and place appointed by him, said Martin, as early as was practicable; to wit, at the house of said Martin, in said Loudon, at four o'clock in the afternoon on said 16th day of said August.

And the said Martin, in his capacity aforesaid, did attend at said time and place so appointed, as aforesaid; to wit, at said

house of said Martin, at said four o'clock in the afternoon of said 16th day of August; to wit, at said Loudon; and did then and there, after hearing the plaintiff and the said defendant, appoint Samuel M. Foss, Daniel Tilton and John M. Heath, all of said Loudon, who were all then and there disinterested persons, to appraise the supposed damage done by said bull, in said close, at the said time when, &c.

And the said appraisers, so appointed as aforesaid, afterward, to wit, on the 17th day of said August, at said Loudon, did appoint a time, as early as practicable, to view the said close where the said supposed damage was alleged to have been done by the said bull, at the same time when, &c., and to hear the said parties and their evidence; to wit, Tuesday, the said 17th day of August, at one o'clock in the afternoon.

And the said appraisers did then and there notify the said plaintiff and the said defendant that they would attend at the said close, at the said last mentioned time, for the purpose aforesaid.

And the said appraisers, at said one o'clock in the afternoon of the said 17th day of August, did attend at said close, for the purpose aforesaid, and did then and there view the said close, and the place where the said supposed damage was alleged to have been done by said bull, at the said time when, &c., and did then and there hear said parties, and their evidence; and did then and there determine that no damage was done by the said bull, in the said close, at the said time when, &c.; which said time was the time of the said bull's then last being in said close, and was the time of the said taking of said bull, as aforesaid; and the said appraisers did then and there make their report in writing, signed by a majority of said appraisers; to wit, by all three of said appraisers, to said justice, that no damage was done by said bull, in said close, at said time when, &c.; and did then and there deliver their said report in writing, so made, as aforesaid, to said justice.

All which the plaintiff is ready to verify. Wherefore he prays judgment, &c.

To this plea the defendant demurred as follows :

Osgood *v.* Green.

And the said defendant says that the said plea of the said plaintiff, by him above pleaded, in bar of the said avowry of the said defendant, and the matter in the same contained, in manner and form as the same are above pleaded, are not sufficient in law to bar the said defendant from avowing the taking of said bull to be just, and that the said defendant is not bound by law to answer the same ; and this he is ready to verify. Wherefore he prays judgment for his damages and costs.

And the defendant shows to the court the following causes of demurrer : The plaintiff does not allege in his said plea that any notice was given the defendant of the report of said appraisers to the justice, or that he in any way had notice ; and, also, that said plea is, in other respects, uncertain, informal and insufficient.

*Clark & Hayes*, for the defendant.

The plea is insufficient because the plaintiff should have alleged that the defendant had notice of the report of the appraisers. Though the statute does not expressly require that he should have such notice, still it could not have been the intention of the legislature to deprive him of that right. It is required that he should have notice of the time and place of hearing by the appraisers, but their report is made to the justice at a time subsequent to the hearing, and at a different place. No time is fixed for its return to the justice, so that the defendant had no means of knowing when the report would be made. The report should therefore have been published to the parties, or the defendant should have been notified of its contents.

2. The plea is no bar to the defendant's avowry, because the report of the appraisers that no damage was done does not deprive the defendant of his lien upon the animal for the costs incurred prior to the report — if, as is alleged in the plea, there was a trespass committed and the proceedings were regular. At common law a person could distrain for a mere trespass, and the remedies by an action of trespass and by distress were concurrent. The reason why the remedy by distress was given in addition to the remedy by action of trespass, is said to be from the

necessity of the thing itself, as it might be impossible to ascertain whose cattle they were that committed the trespass or damage. 3 Black. Com. 6.

Our statute has not changed the law in this respect. *Mills* v. *Stark*, 4 N. H. 512.

The language used at common law and that used in the statute being substantially the same, it could not, according to the established rules of construction, have been the intention of the legislature to change the causes for which a distress could be made. 7 Mass. 523; 4 Pick. 154.

If, then, there was a trespass, nominal damage is a necessary legal consequence—a conclusive presumption of law; for the law in such cases awards nominal damages where none greater are proved. 2 Greenl. Ev., sec. 254.

Therefore, if the report of the appraisers includes nominal as well as special damages, it is against law, unreasonable and void. 1 Step. Nisi Prius 126; and these facts appearing on the face of the pleadings, the defect may be reached by demurrer; but if it does not include nominal damages, the defendant was clearly entitled to costs for the impounding.

The report of the appraisers cannot be conclusive upon the parties, excepting as to the amount of special damages, because, if it is conclusive as to all other matters preceding it, the statute has changed the common law and the practice in such cases so, as to deprive the defendant of a trial by jury, and is, therefore, repugnant to the twentieth article of our bill of rights.

*Bartlett*, with whom were *Butters* and *Leavitt*, for the plaintiff.

No notice of the appraisers' report is required by the statute. Nor is any necessary by the common law. 1 Chit. 328. The report needs no acceptance to give it effect.

2. Our statute has entirely superseded the common law as to the distraint of cattle damage feasant.

By it the cattle are to be taken only for damage done in an enclosure. They must be taken to the statutory pound, and various notices are to be given, and, under certain circumstan-

ces, the cattle may be sold. These are all departures from the common law. Com. Dig., Distress, D, 1 ; 1 Co. Lit. 47, *b* ; 3 Blak. 12.

The requirements of the statute must be strictly complied with. *McIntire* v. *Marden,* 9 N. H. 292; *Bills* v. *Kinson,* 1 Foster 448; *Brown* v. *Smith,* 1 N. H. 36 ; *Kimball* v. *Adams,* 3 N. H. 183.

The statute, having been construed as superseding the common law as to the process and remedy, must be held to have superseded it as to the cause. Under the statute there can be a distress only in a case of actual damages. R. S., ch. 137, secs. 1 and 8.

The appraisers are to inquire whether *any* damage was done by the cattle at the time of their last *being in* the enclosure. The object of the statute was to limit and restrain the common law power, and to make distress a remedy for actual damage only. *Dunton* v. *Reed,* 5 Shepl. 179.

3. The report of the appraisers is conclusive. R. S., ch. 137, sec. 8. By the statute of 1791 such report was conclusive as to the trespass. Laws, Ed. 1830, 206. And the R. S. have not changed this. *Crowell* v. *Clough,* 3 Foster 210. Beside, if there were no damages, there was no cause for distress. *Dunton* v. *Reed,* 5 Shepl. 179.

There having been no cause to distrain, the owner is not chargeable with the costs. In this action the only question is between the plaintiff and defendant as to the legality of defendant's proceedings. If the cattle were taken without just cause, the plaintiff must have judgment. The statute is not unconstitutional as depriving the defendant of a jury trial, for the case falls within the exception of cases in which it has been heretofore otherwise used or practiced. Act 4 Geo. I., secs. 3 and 4 ; Prov. Laws 79 ; Prov. Laws 67. If nominal damages were sufficient, the report is conclusive that there were none.

EASTMAN, J.* The decision of this case depends upon the construction to be put upon several of the provisons of chapter

* PERLEY, C. J., being of counsel, did not sit.

137 of the Revised Statutes, relative to pounds and the distraining of animals. Comp. Stat., ch. 143. This statute, as applicable to the questions raised upon this case as it now stands, varies from the common law so essentially that little light is to be gained from that source.

The first section of the act provides, among other things, that any person may impound any swine, neat cattle, &c., " that shall be found doing damage in his enclosure."

In the third, fourth and fifth sections it is provided that the person impounding any creatures shall leave with the pound-keeper in writing an estimate of the damage done by such creatures, and the amount of the fees and charges incurred ; that he shall, within twenty-four hours from the time of impounding, cause to be delivered to the owner, or person who last had them in his possession or keeping, if known to him, or cause to be left at his usual place of abode, a notice in writing, describing the creatures impounded, stating his estimate of the damage done, and the time when and the place where the same was done, the amount of fees and charges there incurred, and the place of impounding : That when the owner is not known the person impounding shall, within the same time, post up a like notice in some public place in the town and in two adjoining towns.

The sixth and seventh sections provide, that if the owner or party claiming the creatures shall pay the estimated damages and charges to the person impounding, or to the pound-keeper, the creatures shall forthwith be discharged. But if payment be neglected for forty-eight hours, or if the owner or claimant shall refuse to pay the damages estimated, either party may apply to a justice of the peace, who, after hearing, shall appoint three disinterested persons to appraise such damages.

The eighth section is as follows : " The appraisers so appointed shall notify the parties, and as early as practicable view the place where the damage is alleged to be done, and hear the parties and their evidence, and report to the justice whether any damage was done by such creatures, at the time of their last being in such enclosure only, and the sum at which they estimate

the same; and such report, signed by a majority of such appraisers, shall be conclusive upon the parties."

And the ninth section provides that upon payment of the damages so appraised and the charges incurred, with the fees of the justice and appraisers, to be assessed by the justice, such creatures shall be discharged from the pound.

The remaining sections of the chapter contain provisions for the sale of the property, in case it be not discharged from the pound. Such is a synopsis of the statute.

The defendant, in answer to the plaintiff's writ of replevin, by which the animal in question was taken from the pound, has avowed the taking in his close as a distress for the damage done.

To this avowry the plaintiff has pleaded, in substance, that after the animal was impounded, and the defendant had left with the pound-keeper an estimate of the damages done and of the fees and charges incurred, and after notice of the same, the plaintiff refused to pay the damages, and applied to a justice of the peace for the appointment of appraisers to assess the damages; that these were appointed; that they gave notice of the hearing; that the parties were fully heard in the premises; that the appraisers then and there determined that no damage was done by the animal in the defendant's close, as alleged; and that they then and there made their report in writing to that effect and delivered the same to the justice.

To this plea the defendant has demurred, and he places his demurrer upon two grounds; first, that the plea does not allege that any notice was given the defendant of the report of the appraisers to the justice, or that he in any way had notice; and, 2d, that the report of the appraisers that no damage was done, does not deprive the defendant of his lien upon the animal for the costs incurred prior to the report.

It is no doubt true, that whenever a party has a right to be heard before a tribunal, whatever may be its character, an opportunity should be given, upon notice, to exercise that right; otherwise the proceedings will be erroneous. But where the

matter is not of that character, but lies as much within the cognizance of the one party as the other, notice need not be given or stated in pleading. These are general principles, and it is not necessary to cite authorities to sustain them.

By the statute which we have cited, it will be observed that the parties are to be notified and heard upon the question of the appointment of the appraisers, and also upon the general question of the amount of damages to be assessed by them. But it makes no provision for any notice or hearing upon the return of the report of the appraisers to the justice, nor does it appear to contemplate any such course, for it expressly provides that the appraisal " shall be conclusive upon the parties." The action of the appraisers being conclusive, there is nothing for the magistrate to do but to receive the report ; and consequently there can be no hearing before him upon that question, and no occasion for notice to any one. He is made the depositary of the report, and the knowledge of its existence and contents is open to both parties, and equally within the knowledge of both. The matter therefore falls within the general rule, that, being as much within the cognizance of the one party as the other, notice need not be given nor averred in pleading.

The other question raised by the demurrer is of more magnitude, and of much more importance. It is briefly this ; whether cattle that are wrongfully in the enclosure of another can be distrained and impounded, when no actual damages have been done. Can they be impounded for nominal damages only ?

The statute by which cattle are allowed to be distrained, is one giving extraordinary powers. Before any judgment is recovered, and without any legal process, or the act of any officer of the law, the aggrieved party is himself personally empowered to seize and impound his neighbors' beasts, found *damage feasant* in his enclosure. Blackstone says that it is one of those cases in which the law allows a man to be his own avenger, or to administer redress to himself. He also remarks that the taking of cattle *damage feasant* arises from the necessity of the thing itself, as it might otherwise be impossible at a future time to

ascertain whose cattle they were that committed the trespass or damage. 3 Black. Com. 6.

The creatures, however, are in the first instance taken only as a pledge for the satisfaction of the damages done, and the costs consequent upon their being driven to pound follow as an incident of their rightful capture. No costs can be recovered unless they are legally impounded ; and he who would justify his acts under the statute must show that he has strictly complied with its provisions. *McIntire* v. *Marden,* 9 N. H. 288, 292 ; *Kimball* v. *Adams*, 3 N. H. 182.

The animals are not forfeited by reason of the damages, nor can they be sold until after remaining in the pound a specified number of days ; and then only when no one appears to pay the damages and expenses. It is as security for the damage already done that the law permits them to be impounded, and when compensation is made for the injury sustained, with the expenses incident to the injury, the security is relinquished by the surrender of the cattle.

It would seem, then, to follow as a necessary consequence that there must be actual, substantive damage committed, before the creatures can be impounded. There is no propriety or reason in taking forcible possession of property in pledge or as security for damages which have no existence except in theory only ; and we think that the law should not be held to give this extraordinary power of impounding, whereby a party acts as his own avenger, for a mere nominal trespass. Sufficient protection and sufficient redress is afforded by the action of trespass for all such nominal injuries.

It appears to us, also, that the framers of our statute intended to confine the power of impounding for *damage feasant* to cases of actual damages only, and that such is the fair deduction from the language used. If the creatures are found in the enclosure " doing damage," they may be impounded. This would seem to imply that the damage must be something done ; something more than a mere theoretical injury ; that it must be actual. The appraisers are to " view the place where the dam-

age is alleged to be done," and are to report to the justice " whether *any* damage was done by such creatures." Of course if none was done, they report accordingly. The phrase, " whether any damage was done," is evidently a condensation, by the revisors, of the language used in the act of 1791, where it is said that the appraisers shall make return to the justice, " either that the party has sustained damage, and how much, or that such party hath sustained no damage." N. H. Laws 206, ed. 1830.

Upon the payment of the damages appraised and the charges incurred, the creatures are to be discharged from the pound; but if no damages are assessed, there are of course none to be paid, and the report of the appraisers in such a case is conclusive upon the question, that none was committed. Where, therefore, cattle are impounded and the appraisers decide that no damages were done to the close of the party impounding, it follows as a proper deduction that they were illegally impounded, for they must be doing damage in his enclosure, otherwise he had no power to impound them. Actual damages, then, are essential to a legal impounding for *damage feasant.*

If no actual damages are done, so that the impounding is unauthorized, there can be no legal claim upon the owner of the cattle for the charges and fees consequent upon the impounding; and the creatures cannot be detained for the payment of any such claim. The fees and charges grow out of the impounding. They are the expenses of driving the animals to the pound and of keeping them while there, as well as other fees incident to the impounding. All arise from the act of driving them to the pound. If, then, that act is unauthorized by law, all the costs incident to it, must, so far, as the owner of the cattle is to be considered, fail as a claim against him. If the cattle cannot be held for the damages, they certainly cannot for the costs, for the damages are the foundation of the costs, and the latter cannot exist without the former.

The view which we have taken of our statute upon this question appears to have been applied in Maine upon theirs. *Dunton*

v. *Reed*, 5 Shepl. 179. And we are not aware that, upon statutes containing like provisions, any other rule has prevailed elsewhere. The case of *Mills* v. *Stark*, 4 N. H. 512, cited by the defendant, does not conflict with this decision.

We are entirely satisfied that there is no law in this State authorizing the impounding of animals for merely nominal trespasses. An animal may pass through an open gate or bars, without doing the slightest damage ; still the owner may be liable in trespass, for a right has been infringed ; and that such a right may be preserved, the action is properly sustainable. But our statute, we think, was never intended to authorize the impounding of an animal for such nominal damages. The evil requires no such remedy, and it is only in cases of actual damage that a person is permitted to execute the law himself. We are therefore of opinion that the plaintiff's plea to the avowry is good, and that the

*Demurrer must be overruled.*